UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-82280-CIV-MARRA

MIZNER GRAND CONDOMINIUM
ASSOCIATION, INC.,

Plaintiff,

vs.
TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA f/k/a THE
TRAVELERS INDEMNITY COMPANY OF
ILLINOIS, MILLER & SOLOMON GENERAL
CONTRACTORS, INC. AND BOCA MARINA, LTD.,

Defendant.
_____/

## OPINION AND ORDER

This cause is before the Court upon Travelers Property Casualty Company of America's ("Travelers" "Defendant") Motion to Dismiss the Complaint (DE 4).  The Court has carefully considered the motion and is otherwise fully advised in the premises.

I. Background

Plaintiff Mizner Grand Condominium Association, Inc. ("Mizner" "Plaintiff") brings this breach of insurance contract and declaratory judgment action based on the following allegations: Travelers issued various general liability insurance policies spanning from December 1996 through December 1999 to Defendant Miller & Solomon General Contractors, Inc. ("MSGC"). Defendant Boca Marina, Inc. ("Boca Marina") was named an additional insured on the policies.[1] (Compl. ¶¶ 11-13.)  Boca Marina developed the Mizner Grand Condominium, a condominium

---

[1] Boca Marina and MSGC are joined in this action as nominal Defendants. (Compl. ¶¶ 5, 7.)

located in Boca Raton, Florida.  MSGC was the general contractor for the condominium. (Compl. ¶¶ 22-23.)  On March 14, 2002, Boca Marina relinquished control of the condominium to the unit owners. (Compl. ¶ 28.)

On or about August 14, 2003, Mizner sued Boca Marina, its general partner, and MSGC based on numerous alleged construction defects.  (Compl. ¶ 29.)  On or about April 25, 2007, Boca Marina provided formal notice to Travelers of claims made in the underlying lawsuit. (Compl. ¶ 32.)  Travelers failed to defend or indemnify Boca Marina. (Compl. ¶ 40.)  On January 7, 2008, Boca Marina, MSGC, Mizner and various other parties executed a settlement agreement. (Compl. ¶ 38.)  Boca Marina defaulted on its obligations under the settlement agreement, including its obligation to third-party contractors for remediation work. (Compl. ¶ 44.)   As a result, Boca Marina incurred attorney's fees and costs and also became legally obligated to Mizner for damages, costs and attorney's fees sustained by Mizner as a result of Boca Marina's failure to comply with its obligations under the settlement agreement. (Compl. ¶ 45.)  Mizner subsequently moved to enforce the settlement agreement. (Compl. ¶ 46.)  On December 16, 2008, Boca Marina assigned to Mizner its claim under the insurance policies. (Compl. ¶ 47; Assignment, attached to DE 15.)

The pertinent portions of the settlement agreement are as follows:

All settling parties, including the Association, are collectively referred to as the "Parties."

WHEREAS, this Settlement Agreement also settles (except for HVAC and Oven Excluded Claims), all claims, issues and causes of action asserted in this Lawsuit between the Parties to this Settlement Agreement, including all cross-claims, counterclaims and third party claims, but this Settlement Agreement does not settle or affect any claims or causes of action or third-party complaints by Developer against Third Party Defendant Marbon, Inc., a Florida corporation, or any other party, entity or person, with respect to or related to the Claims, nor does this Settlement Agreement settle any Claims assigned by Developers, M&S, and Brito Cohan to

the Association (as further defined below).

  I. Incorporation of Recitations: The matters contained in the preamble are true and incorporated herein by reference.

  VI.  Releases and Assignment

  A.  The Parties hereto mutually remise, release, acquit, satisfy, and forever discharge each other, of and from all, and all manner of action and actions, cause and causes of action . . . and demands whatsoever in law or in equity, and whether liquidated, actual, direct, indirect, special, punitive, incidental, consequential, known, unknown, foreseen, unforeseen, economic or other losses, and whether from contract or tort, which said Parties ever had, now have or may have in the future . . . by reason of the following:

  (a) The original design and construction of, improvements to, maintenance of and subsequent repairs to the Condominium Property and/or Common Elements of the Mizner Grand Condominium ("Mizner Grand") as defined in the Declarations of Condominiums and condominium documents of Mizner Grand.

  (b) The Claims, as identified above.

  (c) All claims and causes of action which were raised or could have been raised in the Lawsuit, whether latent or patent.

  (d) All matter described in the following reports. . .

. . . .

Any and all language in this Release releasing the Parties from any liability or responsibility shall also refer to, release and remise the following from any liability or responsibility, as if said parties were specifically named herein:

  (a) Any of the past or present agents, employees, officers, shareholders, directors, consultants, counsel and insurers of the Parties, their heirs, legal representatives, successors and assigns, including, without limitation, the entities identified in Exhibit 5 hereto.[2]

. . . .

  This Release does not release any obligations of the Parties identified in this Settlement Agreement.

---

[2] Exhibit 5 lists several insurers including Travelers.

3

In moving to dismiss the Complaint, Travelers argues that the release contained in the settlement agreement expressly bars Mizner's claims and must be interpreted according to its plain meaning as a fully enforceable contract.  In response, Mizner argues that the scope of the release was limited to patent and latent construction design defects and did not include first party insurance coverage claims. Mizner also argues that Boca Marina validly assigned its claims against Travelers to Mizner after Boca Marina defaulted on its obligations under the settlement agreement.

II.  Legal Standard.

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed. R. Civ. P. 8(a). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b) (6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950.  When considering a motion

to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

III.  Discussion

Settlement agreements are governed by the rules for interpretation of contracts. Robbie v. City of Miami, 469 So. 2d 1384, 1385 (Fla. 1985); Hanson v. Maxfield, 23 So. 3d 736 (Fla. Dist. Ct. App. 2009); Cheverie v. Geisser, 783 So. 2d 1115, 1118 (Fla. Dist. Ct. App. 2001).[3] "Where the contractual language is clear, courts may not indulge in construction or modification and the express terms of the settlement agreement control." Security Ins. Co. of Hartford v. Puig, 728 So. 2d 292, 294 (Fla. Dist. Ct. App. 1999); see O'Neill v. Scher, 997 So. 2d 1205, 1207 (Fla. Dist. Ct. App. 2008) (same); Commercial Capital Resources, LLC v. Giovannetti, 955 So. 2d 1151, 1153 (Fla. Dist. Ct. App. 2007) (same).

On the other hand, when a phrase in a contract is ambiguous and of uncertain meaning, and may be fairly understood in more ways than one, a trial court may admit parol evidence to explain the words used in the contract and to understand how the contracting parties intended for those words to be interpreted. Emergency Associates of Tampa, P.A. v. Sassano, 664 So. 2d 1000, 1002 (Fla. Dist. Ct. App. 1995) citing Friedman v. Virginia Metal Prods. Corp., 56 So. 2d 515, 517 (Fla.1952) and Joseph U. Moore, Inc. v. Howard, 534 So. 2d 935 (Fla. Dist. Ct. App. 1988). To consider such extrinsic evidence, the words must be sufficiently unclear such that the ambiguity exists on the face of the contract. Emergency Associates, 664 So. 2d at 1002.

---

[3] In a diversity case, the Court applies Florida law.  See Pendergast v. Sprint Nextel Corp., 592 F.3d 1119, 1132-33; Royal Ins. Co. of America v. Whitaker Contracting Corp., 242 F.3d 1035, 1040 (11th Cir. 2001).

After careful consideration, the Court finds that the relevant portions of the settlement agreement are ambiguous and therefore the motion to dismiss the Complaint for failure to state a claim must be denied.  Specifically, it is unclear whether the settlement agreement releases Travelers from both third-party and first-party claims.

To begin, the settlement agreement resolves  "all claims, issues and causes of action asserted in this Lawsuit between the Parties to this Settlement Agreement, including all cross-claims, counterclaims and third party claims."  It "does not settle or affect any claims or causes of action or third-party complaints by Developer against . . . any other party, entity, or person, with respect to or related to the Claims. . . ."  It is unclear whether this provision preserved a claim by Boca Marina against its own insurer.  Arguably, a suit brought by Boca Marina against its own insurer is related to claims brought by Mizner against Boca Marina.[4]

The language of the release is equally unclear.   The release contained in section IV of the settlement agreement released all Parties from "[a]ll claims and causes of action which were raised or could have been raised in the lawsuit, whether latent or patent."  While the first part of this clause is broad, the use of the term "latent or patent" appears to qualify this clause.  This qualifying language may have been intended to limit the settlement to construction defect claims which were raised or could have been raised in the lawsuit, and was not intended to encompass a claim for a breach of an insurance policy.

---

[4] The Court rejects Travelers' argument that this provision cannot apply to it because it is a "Party" (with a capital "P") to the settlement agreement and not a generic "party."  (Reply at 5.) The settlement agreement is also ambiguous on this point. The argument can be made that, Travelers Casualty & Surety Company, as bond surety to Nanrick Plumbing Services, Inc. is a Party, while the Traveler's entity that is a defendant in this action was the insurer of a Party, namely Boca Marina.

The ambiguity of the release extends to the portion which refers to "insurers of the Parties" as identified in Exhibit 5. While this provision extends the release to Travelers, this provision provides no more clarity as to whether it applied only to third-party insurance claims, or first-party insurance claims as well.

At the very least, the release is a partial release, not a complete release.  Boca Marina was not released from performing under the settlement agreement ("This Release does not release any obligations of the Parties identified in this Settlement Agreement").  Even reading the settlement agreement as intending to include a release by Boca Marina of Travelers, it is unclear whether the release of Travelers was complete or only to the extent Boca Marina was released.   Thus, it is unclear whether, to the extent Boca Marina remained obligated, whether Travelers also remained obligated.  In other words, if there was an intent to release Travelers, it is unclear whether Travelers was released to a greater extent than its insured.[5]

---

[5] The Court notes that Travelers also argues that Boca Marina's failure to assign their claim prior to the settlement is fatal to Mizner's lawsuit.  In making this argument, Travelers relies upon Fidelity and Casualty Co. of New York v. Cope, 462 So. 2d 459 (Fla. 1985).  In Cope, the personal representative of a third party killed in a car accident brought an excess judgment action against the driver's insurer, alleging that the insurer negligently and in bad faith refused to negotiate a settlement of the wrongful death claim.  Prior to filing suit, the personal representative executed a release and satisfaction of judgment in favor of the insured.  The release was not preceded nor accompanied by an assignment to the injured party of any bad faith claim existing in favor of the insured.  Cope, 462 So. 2d at 459-60.  Under those facts, the court held that the personal representative could not bring an action against the insurer of the driver.  Specifically, the court stated, "absent a prior assignment of the cause of action, once an injured party has released the tortfeasor from all liability, or has satisfied the underlying judgment, no such action may be maintained." Id. at 459.

Cope is distinguishable on the basis that there were no further obligations owed after execution of the release.  In contrast, under the facts of the instant case, the release was partial, not complete.  Boca Marina still had to perform under the settlement agreement and was not released from that performance.  See Cope, 462 So. 2d at 459. ("once an injured party has released the tortfeasor from all liability, or has satisfied the underlying judgment, no such action may be maintained.").   Thus, in this case, unlike Cope, there was no full and complete release

In any event, given the contractual ambiguity, the Court finds that the Complaint states a claim and the contractual ambiguity must be resolved either at summary judgment or at trial.

IV.  Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Travelers Property Casualty Company of America's Motion to Dismiss the Complaint (DE 4) is **DENIED.**

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 24th day of May, 2010.

_____
KENNETH A.  MARRA
United States District Judge

---

which would have required a pre-settlement or contemporaneous assignment of Boca Marina's rights.